White, J.
The questions now before the court, in this case, arise upon exceptions to the master’s report. The case is one of long standing, and has twice been before this court upon other questions — 19 Ohio Rep. 328 ; 6 Ohio St. Rep. 13. The object of the bill was to obtain a construction of the will of Henry Wick, and a decree for the distribution of his estate, according to the rights of the several parties. At the January term, 1857, of this court, a decree was rendered, in which, after defining the interests of the several parties under the will, the court found that, as to the residue of his estate, the testator died intestate, leaving heirs at law, who were entitled to the same, subject to any legal claim of Hannah Wick, his *507 widow, to a distributive share therein; and ordered that the said estate as to which the said Henry died intestate, be distributed agreeably to the statute in such case made and provided. For the purpose of ascertaining the distribution that should be made, and of stating an account between the parties, the cause was referred to the master whose report is now before us upon the exceptions referred to. The widow, since the filing of her answer, has died testate, and her personal representatives have been made parties, and represent the rights which are claimed to have vested in her as widow of Henry Wick.
The principal exceptions are the third and fourth. The third excepts to the finding of the master, “that the widow, having elected to take the provision made for her in the will,” in lieu of dower, “ is not entitled to any share of the personal estate under the statute, whether such personal estate were testate or intestate;” and the fourth, to the finding that the widow was not entitled to anything for her year’s support, and if she were, that her executors can not recover it.
The findings are as the exceptions assume, and the questions, therefore, are, whether the master has correctly applied the law?
Independent of contract, and of the claims of .creditors, there are but two modes provided for the disposition of the estates of decedents, and each operates entirely independent of the other — the one by law, the other by will. The former provides for the dower of the widow, and in the absence of a testamentary disposition, directs the descent of the real, and the distribution of the personal estate, according to the will of the law-making power. The latter, without regard to the order of succession provided by statute, disposes of the prop erty according to the will of the owner, subject to such rvles and restrictions as the legislature has seen proper to impose. Subject to these rules and restrictions, any one, having legal capacity, may make such a disposit’on of all or any oart of his property as he may choose; and to the extent that he makes such testamentary disposition, his estate is withdrawn from the operation of the statutes regulating descents and *508 distributions, and passes 'under the will alone. As to the property included within, and disposed of by the will, it becomes a law unto itself, and every one claiming any interest under it, must conform to all of its provisions. But nothing less than the disposition of the property will prevent the operation of the statutes. If the owner fails, for any reason, to designate who shall succeed to it, the law steps in at his death and supplies the omission. Crane v. Doty, 1 Ohio St. Rep. 282. The intention of the testator has no efficacy, and can be regarded only so far as it is apparent in the dispositions made by his will. If he has left property undisposed of, its disposion is not governed by his will, but by another rule, having its origin in another source, in the application of which the intent of the testator can have no influence. This rule operates in the same manner, as if the deceased had left no other property, and ¡jnade no will. As to the devised property he is a testator; as to that not so disposed of, an intestate. Crane v. Doty, 1 Ohio St. Rep. 282; Needles v. Needles, 7 Ohio St. Rep. 432; Nickerson, Adm’r v. Bowley, Ex’rs, 8 Met. 424.
The subject matter of the act in relation to wills is testamentary property, not property as to which there is no will. This must not be overlooked in construing its provisions..
So far as the exception would imply a claim on the part of the widow, under the statute, to a share of the property disposed of by the will, it can not be supported; and is not insisted upon in the argument here.
Keeping in view what has already been stated, we will now consider the statutes,-upon the construction of which the solution of the present controversy rests.
The claim on behalf of the widow, referred to in the third exception, is based upon section 180 of the act to provide for the settlement of estates. (S. & 0. Stat. 601, sec. 175.) This provides that “ when the intestate shall not have left any legitimate child, heir of his body, the widow shall be entitled to all of the personal estate subject to distribution upon settlement of the estate, and if the intestate shall have left such child, the widow shall be entitled upon distribution to one half *509 of any sum not exceeding four hundred dollars, and to one third of the residue of the personal estate subject to distribution.” The distribution of personal estates is provided for in the ninth section of the “ act regulating descents and the distribution of personal estates.” (Chase’s Stat. vol. 3, p. 1790, and Swan’s Stat. of 1841, p. 288.) This section provides that “ if any person shall die intestate, leaving any personal estate, it shall be distributed agreeably to the course prescribed for the descent of estates which came not to the intestate by descent, devise, or deed of gift; saving, however; such rights as any widow may have to any portion of such personal estate.”
It is, however, urged in argument, on behalf of the com plainant, that the 180th section, above referred to, only applies “ where no will exists — a case of intestacy in toto” — and that the case of the widow, where there is a partial intestacy, is provided for in ,the act relating to wills.
The act for the settlement of estates, of which the section in question forms a part, and the act relating to wills, were passed on the same day — the former taking effect on the first of November following — the latter on the first of October, one month earlier. The effect of the latter act will be a subject of after consideration. We will first determine the meaning of the section of the statute upon which the claim of the widow is placed.
The ninth section of the act regulating descents and the distribution of personal estates, and the 180th section of the act for the settlement of estates, comprehend the whole subject of the distribution of intestate personalty; and combined, furnish the only rules for ascertaining those who may be entitled to it; and which, when applied, leave nothing undisposed of. Though the right to a distributive share of the personal estate, vests at the decease of the intestate, yet the amount can not be ascertained, nor distributed, except upon settlement of the estate; and as to her due proportion of this amount, the right of the widow, stands upon the same footing as that of any of the other distributees. No good reason is perceived for giving to the term “intestate” a different meaning in one section from what it should receive in the other. To *510 restrict it, therefore, to cases of “intestacy in toto,” would have the effect to leave intestate personalty, in cases of partial testacy, undisposed of by either the law or the will. We are satisfied that the construction contended for is not admissible.
The widow having, in this case, elected to take under the will, it is further argued, that her right as a distributee under the statute is cut off, and that the provisions, contained in the act relating to wills, declaring the effect of such election, “ becomes her only source of title to the undevised personalty.”
The question, thus made, involves the construction of the 45th and 46th sections of that act. The statutes we have been considering have exclusive reference to intestate property. The object of the act, now under consideration, is to enable persons to withdraw their estates from the operation of these laws; and, by will, to make such a disposition thereof, as will better conform to their wishes; and to prescribe such rules and restrictions for the exercise of the power conferred, as were deemed proper.
The first section authorizes any person, having the qualifications described, to give and' devise any rights, or property of any description, of which he may be the owner, to any person.
The 45th section provides that, “ If any provision be made for a widow, in the will of her husband, she shall within six months after the probate of the will, make her election, whether she will take such provision, or be endowed of his lands; but she shall not be entitled to both, unless it plainly appears by the will to have been the intention of the testator that she should have such provision in addition to her dower.” This reverses the rule of the common law, by which a devise or bequest to a widow was presumed to be in addition to her dower, unless the claim, under the will, and the assertion of the right of dower, were so repugnant, that the two could not consistently stand together. By the statute the provision is deemed to be in lieu of dower, unless it plainly appears that the testator intended it to be in addition to it. The bar created by this section has no reference to her rights as distribu *511 tee. It is a copy of the 11th section of the act in relation to estates in dower, by the curtesy, etc., found in chapter 60 of the Revised Statutes of Massachusetts, of 1835; and it was held in Ex parte Kempton, 23 Pick. Rep. 163, that it had no application to a widow claiming, in addition to such provision, her third of the personalty undisposed of by the will. The language of the statute, under which she was held entitled to the third was — “ If the intestate leave a widow and issue, the widow shall be entitled to one third of said residue ” — the residue being what was left of the personalty after payment of debts.
The remaining section is the 48th. After prescribing the manner of making the election, it provides, “ if the widow fail to make such election, she shall retain her dower, and such share of the personal estate of her husband, as she would be entitled to by law, in case her husband had died intestate. If she elect to take under the will, she shall be barred of her dower, and take under the will alone.”
Without this section, the effect of the first, which authorized the husband to dispose of his whole estate, and of the 45th, which, in case the widow elected not to take under the will, withdrew from the operation of the first, her dower only, would have been, in cases where there was a testamentary disposition of the whole of the personal estate, to deprive her of any share of the personal estate given her by the law, and leave her with only her dower. Her election would have involved the choice only between dower alone, and the provision made for her in the will. But in empowering the husband to dispose of all of his estate, by will, the legislature, evidently, did not intend to empower him, against the consent of the widow, to abridge her right to dower, and a distributive share of the personalty, under the statutes in relation thereto. Hence, to obviate such result, it declared, in effect, in the 46th section, that if she failed to elect, she should retain not only her dower, which had been saved to her by the preceding section, but also such share of the personalty as she would have been entitled to, by law, if her husband had died intestate, although he might, by the will, have undertaken to dispose of the same, *512 The object was not in case of non-election, to create a new source of title; but to prohibit the power of testamentary disposition, then being created by the act, from being made effectual to impair the rights vested in the widow under the law in relation to dower and distribution. It enabled her, whatever disposition the will made of the property, to set up her title and rights under the law, in opposition to the will, and to this extent defeat its provisions.
Having thus saved to the widow her dower and her rights in the personalty, under the law, in case of a failure to elect, though adverse to the dispositions of the will, the remaining clause of the section declares the effect of an election, in this language — “ If she elect to take under the will, she shall be barred of her dower, and take under the will alone.” The phrase “ take under the will alone,” is intended to define the mode in which she is to take, in case of election. So far as the dispositions in the will conflict with those of the statute, there are two modes, under either of which she is authorized to take; but where the dispositions of the will cease, there is but one — that provided by law. The effect, therefore, of this clause is to declare that though, before election, she had the choice to take under the will, or defeat its provisions by taking under the law, yet, having elected, she shall take nothing contrary, or in opposition, to the will, but under it alone. But-further — having, in the former clause, declared specifically, that, on failure to elect, the widow should retain not only her dower, but also such share of the personalty as if her husband had died intestate, to have in the next clause, in case of election, declared her barred of dower, without adding more, might have given rise, upon a well-known rule of construction, to the inference that, as the bar was specifically applied to dower only, it was not intended to cut off her rights to the personalty under the law, though it might be disposed of by the will. The language used repels this inference, and it, or some other of similar import, was necessary, or at least proper, for this purpose.
From a careful consideration of the act relating to wills, its object, and policy, we can find no satisfactory evidence of an *513 intention to abridge the legal rights of the widow, or other distributee, in the personal estate, except so far as the assertion of such rights would conflict with the disposition of such property, made by the testator in his will.
As to the fourth exception: The grounds upon which the master places his finding, to which this exception applies, are that the allowance required to be set off to the widow, for her year’s support, is a personal privilege in her favor, which she may ask for or not as she thinks proper. That if she does not, her personal representative can not claim the benefit of it after her death, when she, in her lifetime, neither needed nor asked for it.
The statute which gave the right, did not make it depend upon her necessities nor upon her asking or omitting to ask for A. It was the express duty of the appraisers to set it off to her, either in property, or money, and without regard to whether her husband died testate or intestate. Collier v. Collier’s Ex'r, 3 Ohio St. Rep. 369. The property to be set off,, or the sum of money certified to be necessai-y for the purpose, is not to be included in the inventory, but in a separate schedule. The sum thus certified is classed among the debts, and is the second class which it is made the duty of the exe eutor or administrator to pay. In Dorah's Adm'r v. Dorah’s Ex’r (4 Ohio St. Rep. 293), the appraisers; after setting off certain articles of personal property, certified the further sum of $157 13 as necessary for the support of the widow. This was done on the 15th of March, 1852, and she died on the 24th. The death of her husband had occurred on the 1st of the same month. What she had received was sufficient to support her fi r the time she survived her husband, and to pay her funeral expenses, and those of her-last sickness. She had made no demand for any part of the balance then sought to be recovered by her administrator. It was held that these facts constituted no defense; and that the allowance conferred a vested right of property, and was not divested by her death. In the present case, no allowance was ever made. But the law enjoined the duty upon the appraisers to make it. No act of hers appears, whereby she waived or relinquished it; *514 and from the circumstances of the present case none can be implied.
The surviving complainant, in this case seeks, as distributee, ■to recover from the executors of Henry "Wick, senior, his distributive share of the property as to which said Henry has •been found to have died intestate. The executors are also residuary legatees of the widow. And the question is whether, in stating the account between them and the distributees of Henry Wick, senior, they shall be allowed to withhold the •amount that ought to have been allowed to the widow for her year’s support, and which, if it had been allowed, they, with the co-legatees, who are her executors, and parties in this suit, would have taken under her will? We are of opinion that such allowance should be made. It was not a discretionary power given to the appraisers, to be exercised or not, as they might deem necessary, according to circumstances. They were required to make a setoff and allowance sufficient to support the widow for twelve months, and, if there was not property of a suitable kind, to certify what sum or further sum In money was necessary for .the purpose.
The opinion in Adams v. Adams (10 Met. R. 170), would seem to be in conflict with the view here taken. That decision is based upon the construction of the statute of Massachusetts. The language of that statute is different from ours, and the construction, which the court put upon it, was that the power, conferred on the probate court to. make the allowance, was •discretionary. We find such was not the character of the duty enjoined on the appraisers by our statute. This exception is therefore, sustained.
There are two other exceptions which we will dispose of. 'The first is based upon a supposed want of particularity in the ■account reported by the master. This is overruled. As to the second, we agree with the master that the term “ debts,” as used in the will, includes not only the debts that the testator was owing at the time of his decease, but also all that might accrue thereafter in the settlement of the estate; and that the bank and canal stocks constitute a fund primarily liable for their payment, as well as for the payment of the “ legacies and *515 ■donations ” mentioned in the will. Although ordinarily the undisposed of personalty is first liable for the payment of the debts, yet, where the testator, by the dispositions made in his will, indicates a different arrangement, and clearly designates a particular fund for this purpose, such funds should be first exhausted. We are of opinion that he has done this in the present case. This exception is, therefore, overruled.
The other exceptions can be more* appropriately examined in the district court; and, as to the matters not herein disposed of, the cause will be remanded to that court for further proceedings.
Scott and Wilder, JL, concurred.
Brinkerhoee, C.J., dissented to the first proposition of the syllabus, but concurred in the remainder.
Ranney, J., having been of counsel, did not sit in the case.